JAMES MONACELLI *vs.* MARIE C. HALL.

APRIL 30, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This is an action in assumpsit to recover the reasonable value of materials furnished and labor performed by the plaintiff at defendant's request, in connection with painting the interior of the latter's house.  After a jury in the superior court rendered a verdict for the plaintiff in the amount of $432.99 the trial justice denied the defendant's motion for a new trial.  The case is before us on the defendant's exceptions to that decision and to a certain portion of the charge.  Since the verdict was rendered, the death of the plaintiff has been suggested upon the record and his widow, as administratrix, entered her appearance to prosecute the case.

The defendant's house was operated by her as a convalescent home. At her request and after an inspection thereof, plaintiff offered in writing to furnish the material and labor necessary to paint the interior in accordance with the specifications therein set forth. The total price to be paid therefor by the defendant was $870. No specific time for payment was stated in this offer. The plaintiff, however, testified that the defendant agreed orally to make payments as the work progressed, but the defendant denied this testimony. At any rate the defendant accepted the offer and did pay the plaintiff $100 before he commenced the work and during its progress made payments on account, totaling in all the sum of $370. The plaintiff for the most part did this work alone. From that point on the evidence is sharply conflicting.

The evidence for the plaintiff tended to show that the house was large and was badly in need of painting; that under the contract he had completed all but five rooms and a rail in the hall by Thanksgiving 1943; that about that time he asked the defendant for a further payment on account, as she had promised, and that the defendant refused such payment until she could consult her husband. The latter had taken no part previously in making the contract or supervising the work. When reminded of this, defendant for the first time complained of alleged poor workmanship. One word led to another and defendant, becoming very angry and noisy, not only threw certain of his equipment out of the house but also told him she would not permit him to return and complete the contract.

The plaintiff further testified that he was ready and willing to complete the work, even without the requested payment, but was prevented from doing it by defendant's action. According to his testimony he used only standard paints and the workmanship was good, considering that the defendant was trying to cover old and dirty paint of a dark color which was bound to show some "bleeding" after a period of time. Plaintiff also testified that, in the course of his labor, he was requested by the defendant to do certain work of plaster-

ing and painting that was not included in the contract; that he did such extra work, and that the fair and reasonable value thereof was $87.50. This sum together with the reasonable value of what he had done under the contract, as computed by him, less credit for all payments, amounted to $422.50. An expert witness substantially corroborated the plaintiff as to the quality of his workmanship; and his son corroborated him concerning the defendant's action in preventing completion of the work.

On the other hand, the evidence for the defendant tended to show that the house was not nearly as large as the plaintiff had testified, nor was it in such poor condition; that the plaintiff had so thinned out his paint that it did not properly cover the old dark paint and gave evidence of general shadow and "bleeding"; that during the incident around Thanksgiving the plaintiff was so insistent and noisy in his demands for a further payment that he frightened the children and upset the patients and that she was obliged to ask him to leave; that she never threw any of his equipment out of the house but that it was taken away by plaintiff and his son; that she never prevented him from completing the contract but that he refused to do any further work unless she then made the requested payment; and that although she had made some payments before completion of the work, she had never obligated herself to do so.

She further testified that the plaintiff did no extra work at her request but that all such work was covered by the contract or was gratuitously performed by the plaintiff. Three expert witnesses, whose interest in the case was questioned by plaintiff, also testified to the effect that the workmanship was not up to standard for the number of coats of paint that were called for by the contract, even though the old paint had been dark. The defendant also testified that it cost $100 to have another painter finish two of the rooms that plaintiff had not completed; but it appeared that she had these two rooms "craftexed", which was not called for by the plaintiff's specifications and was more costly. She also

testified that it would cost $269 to finish the remainder of the work. On this conflicting evidence the jury, apparently believing the plaintiff, rendered a verdict for him with interest and the trial justice has denied defendant's motion for a new trial.

The defendant first contends, under her second exception, that the trial justice erroneously charged the jury as to the "extras", so called, in that he instructed them that they could hold defendant liable for such work "regardless of whether it was requested by her", and that such instruction took from the jury the right to determine whether or not such work was in fact done gratuitously by the plaintiff. But a reading of the whole context, in connection with the so-called extras, shows that the trial justice did not preclude the jury from considering this issue and did not charge precisely as defendant contends. In that portion complained of he was merely trying to illustrate the case in which the jury could find the defendant liable upon an implied promise, even though she "may not have specifically asked" plaintiff to perform such work, provided certain essential conditions were found to exist. He had ruled out any liability for work that the jury might find was not authorized by defendant and he twice stated the necessary conditions that should be found if the defendant was to be held liable on such an implied promise.

It is true that the trial justice did not specifically instruct the jury that the defendant would not be responsible if they found on the evidence that the plaintiff had performed the work "gratuitously". But no such charge was requested and, in our opinion, it was inherent in the charge as given. He did set forth therein the plaintiff's claim as to the extras and the defendant's adverse claim in relation thereto; and later proceeded as follows: "The plaintiff makes a claim that he is entitled to so much money. It is necessary for him to support his claim by evidence that preponderates over the evidence which is opposed to his claim. Now, the plaintiff here has made a certain claim and certain testimony has been brought

in here which is in opposition to that claim. You consider that evidence. Has he sustained his claim? Or if he has sustained it in part, to what extent has he sustained it? By a preponderance of the evidence I mean evidence that seems to you stronger and more convincing than is the evidence which is opposed to that particular claim or issue."

When the charge is read as a whole, in connection with the respective claims and evidence concerning the extras, we are of the opinion that it substantially presented the law governing the claims of both plaintiff and defendant as they were based on the evidence, and that the jury could not reasonably have been confused or misled as argued by the defendant. Defendant's second exception is therefore overruled.

The defendant contends under her first exception that the trial justice, in denying her motion for a new trial, misconceived or failed to perform his duty. In substance she contends that, in passing on such motion, he failed to exercise his independent judgment to determine whether or not the verdict was supported by a fair preponderance of the evidence; and that he erroneously believed that he had no right to substitute his own judgment for the jury's finding on conflicting evidence, even though, as he indicated, he otherwise would have found differently. In support of these contentions the defendant strongly relies on *Baker* v. *Kinnecom*, 68 R. I. 453, and on two excerpts from the trial justice's decision. But it should be noted that in the decision the second excerpt does not immediately follow the first one; and that the first one does not contain all the context that throws light upon the apparent attitude of the trial justice.

The pertinent context of the first excerpt—and we have italicized that portion which is not quoted in the defendant's brief—reads as follows: *"Now, there are questions of fact and I find it very difficult—I have gone over the testimony with some care before this morning*—and while perhaps the verdict is not just what the court—the amount that the court would have given had the case been tried by the court, I am not allowed to substitute my judgment for that of the

jury. *If the verdict is against the evidence, why, then I have the right and it is my duty to grant a new trial. But I can't, simply because I perhaps would have done differently than the jury, substitute my judgment. It was a verdict of twelve people.*"

Then appears in the decision a short general discussion of possible weaknesses in the evidence of the experts for the defendant, whereupon there follows the second quotation, referred to in the brief, namely: "There are questions of fact and the jury has passed upon them and, as I say, while the judge presiding might have found differently if the case had been tried before him, that doesn't *necessarily* permit him to grant a new trial." (italics ours) The decision continues: "As I said, this is a difficult case and there is a substantial amount involved, that is, substantial for a householder, but I feel that I can't *properly* grant a new trial and I don't see how I can *properly* reduce the amount." (italics ours)

If the italicized and other portions of the decision are read together and are given reasonable effect, we are of the opinion that the decision shows, first, that the trial justice was fully aware of his duty, in passing on a motion for a new trial, to exercise his own independent judgment and to determine whether or not the verdict was supported by a fair preponderance of the credible evidence; and, secondly, that while his own examination of the evidence perhaps might have created some doubt as to the correctness of the amount, nevertheless it was so sharply conflicting and nearly balanced that fair-minded men might reasonably come to different conclusions thereon, and he was unable to find that the jury's verdict in any material respect was against the fair preponderance of the credible evidence. If that were his attitude, we are of the opinion that he recognized and applied the law which has been set forth consistently in many previous cases. *Spiegel* v. *Grande,* 45 R. I. 437; *Nichols* v. *New England Tel & Tel. Co.,* 57 R. I. 180; *Raleigh* v. *Fitzpatrick,* 60 R. I. 79; *Bradley* v. *Brayton,* 61 R. I. 44. On this view the

case is vitally different from that of *Baker* v. *Kinnecom, supra,* relied on by defendant.

If, however, the decision may be construed as showing that the trial justice misconceived or failed to perform his duty, as defendant contends, or if he believed that he could not properly approve the verdict, although his own judgment did not warrant him in saying that it was against the fair preponderance of the evidence, it would be our duty to examine the evidence independently of his decision. But in so doing the rule to be applied is not the same as that which governs a trial justice when he is passing on a motion for a new trial. Rather, in such a case, the court of last resort examines the evidence to determine whether it *strongly* preponderates against the verdict. *Spiegel* v. *Grande, Raleigh* v. *Fitzpatrick* and *Baker* v. *Kinnecom, supra.*

Having this in mind we have examined the transcript and find that the evidence is sharply conflicting upon almost every material issue. The verdict therefore rested largely on the credibility of the witnesses and we have not had the opportunity to see and hear them. There is evidence which, if believed, would justify the jury's verdict as rendered for the plaintiff. Reasonable minds might differ as to the amount of the verdict; but we cannot say, from our examination of the transcript, that the verdict was grossly excessive or that the evidence *strongly* preponderates against it in any material respect, so as to require the granting of a new trial. Under the circumstances defendant's first exception is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment on the verdict.

*Grim & Littlefield, Benjamin W. Grim,* for plaintiff.
*Leo M. Cooney,* for defendant.