EDWARD J. DANIELS, SR. *vs.* OSCAR YANYAR.

FEBRUARY 13, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J.   This is an action of trespass for assault and battery.   In the superior court a jury returned a verdict for the plaintiff in the sum of $1,500.   The trial justice denied defendant's motion for a new trial unconditionally, but found that the damages were excessive and granted a new trial unless plaintiff remitted all of the verdict in excess of $1,000.   Such remittitur was filed and defendant has prosecuted to this court his bill of exceptions to the refusal to grant a new trial unconditionally and to certain evidentiary rulings during the trial.

The evidence discloses that plaintiff and defendant, both residents of the town of Barrington in this state, were long-time employees of the New England Telephone and Telegraph Company and had been casually acquainted for some years. In 1950 they became associated in the handling and racing of horses. When not at the race track the horses were kept in defendant's barn.

There were no witnesses to the alleged assault. The testimony of plaintiff and defendant on that point was in irreconcilable conflict. The plaintiff testified that the assault took place in defendant's barn on Friday, July 21, 1950, about 7:30 p.m.; that after supper it was his custom to go to the barn to feed and care for the horses; that on the evening in question, while he was working on one of the horses, defendant came into the barn and accused him of trying to pull a "fast one" and to "double cross him"; that following such accusation and without any provocation defendant grabbed plaintiff by the coat and, striking heavy blows in his face with both fists, knocked him against a cement curb, causing him to fall backward and break his glasses; that when he, the plaintiff, got up he asked what the matter was and defendant replied that he had just come from a barroom and that he "got too steamed up when he was mad"; that he then said he was sorry for what had occurred; and that he insisted that plaintiff go into the house and have a cup of coffee with him.

The plaintiff further testified that sometime thereafter they went into the house and sat in a small room off the kitchen where they engaged in general conversation; that defendant's wife and a Mrs. Schneider, a practical nurse, were in the house; that Mrs. Yanyar served supper to her husband; and that neither plaintiff nor defendant made any mention of the assault. The plaintiff claimed that he left defendant's house shortly after ten o'clock, arriving home about 10:30 p.m.; and that his daughter Marie and her husband Charles Dubuc, who were in the house at that time, observed his condition. They both testified that he

told them about the assault; that they proposed that the police be notified; but that plaintiff would not consent to such action, stating that he did not want to make trouble for defendant.

The defendant denied any assault such as plaintiff claimed. He testified that he returned from work on the evening in question and had his supper; that he did not go to the barn at all; that plaintiff came to his house on that evening about eight o'clock and they went into a room off the kitchen, where they remained talking about horses and business and indulging in several drinks; that before leaving the house plaintiff went to a lavatory located off the kitchen and upon emerging therefrom collided with a chair; that he had to be assisted by defendant and his wife, both of whom testified that at that time plaintiff was unsteady on his feet; that they did not leave the house until about midnight, when he and his wife accompanied plaintiff to his home; and that his wife drove defendant's car, as plaintiff could not get his car started.

The defendant further testified that plaintiff, on alighting from the car at his home, took several staggering steps backwards; that defendant's wife thereupon assisted him to his front door where she left him; that on the following morning he, the defendant, telephoned to plaintiff; and that during the conversation plaintiff apologized for his condition on the previous evening, telling defendant that he could not remember anything after the second drink and that he thought "in trying to go upstairs alone he fell downstairs * * *." He also said that "he started to go through a door, thought the door was open, and went through it head first." The defendant positively denied that he had assaulted plaintiff either in the barn or at the house. His claim that he had been home all evening was supported by the testimony of his wife and Mrs. Schneider.

In his rescript denying defendant's motion for a new trial unconditionally, the trial justice stated that in his independent judgment, based upon the evidence and the credi-

bility of all the witnesses, the verdict of the jury, with respect to liability, did substantial justice between the parties. Under defendant's exception to the denial of his motion for a new trial unconditionally he contends that such decision was erroneous in that the trial justice misconceived certain material evidence; that the evidence strongly preponderated against the verdict; and that the damages, even after being reduced by the trial justice, are still excessive.

In support of such contention, defendant relies on certain statements of the trial justice in his rescript purporting to be recitals of the testimony which he contends are not in accordance with the record. He first points out that the trial justice therein stated: "The defendant testified that the *plaintiff* made a telephone call to him on Saturday morning, July 22nd * * *." (italics ours) The record does not support this statement. Both plaintiff and defendant testified that the telephone call originated from defendant's home. The trial justice also said: "In their testimony, each was positive that the other originated the call." There was no such contradiction of record.

The trial justice further expressed himself as follows: "However, the defendant's wife, Mrs. Yanyar, testified on this point, stating that she was with her husband when he originated the call. Thus, her testimony clearly contradicts that of her husband and so clear a contradiction coming from one so closely related to the defendant, had a definite adverse effect on the credibility of the defendant." The record does not support this statement. On the contrary Mrs. Yanyar's testimony corroborates that of her husband as to where the telephone call originated. The conflict in the testimony is merely as to who participated in this conversation and what was said therein. The trial justice also said that the *plaintiff* had testified that he made an automobile trip to Marshfield, Massachusetts, on Sunday, *July 23*. This statement is not in accordance with plaintiff's testimony. He testified that the trip was made on *July 30*.

It appears that the faulty recollection of the trial justice as to the above-mentioned circumstances clearly affected his judgment in appraising the credibility of certain witnesses and the weight to be attached to their testimony. In view of that fact it is our opinion that his decision should not be given the same persuasive force which usually attaches thereto. Such being the case it becomes necessary to examine for ourselves the transcript of evidence without the assistance which we ordinarily receive from a trial justice's decision on a motion for a new trial. This brings the case under our well-established rule that the verdict will stand unless in our judgment the evidence strongly preponderates against it. *Bradley* v. *Brayton,* 61 R. I. 44; *Monacelli* v. *Hall,* 71 R. I. 55; *Audette* v. *New England Transportation Co.,* 71 R. I. 420.

Applying this rule to the decidedly conflicting evidence in the instant case, we find that the verdict necessarily rested largely on the credibility of the witnesses, whom we have not had the opportunity to see or to hear. The evidence for plaintiff, if believed, would amply justify a verdict for him on the question of liability. Apparently the jury did not believe defendant and his witnesses. In the circumstances we are not warranted in finding from our examination of the transcript that the evidence strongly preponderates against the verdict. As to defendant's claim of excessive damages, it is to be noted that the trial justice granted a substantial reduction of the sum awarded by the jury. In our judgment the damages as thus reduced are not so excessive as to justify this court in ordering a further reduction thereof. The defendant's exception to the denial of his motion for an unconditional new trial is overruled.

The exceptions to rulings on evidence during the trial are not of sufficient importance for specific mention. We have considered all such exceptions and find them to be without merit. They are therefore overruled.

All of the defendant's exceptions are overruled, and the

case is remitted to the superior court for entry of judgment on the verdict as reduced by the remittitur.

*Higgins, Kingsley & Williamson, Arnold Williamson, Jr.,* for plaintiff.

*Henshaw, Lindemuth & Siegel, Daniel S. T. Hinman,* for defendant.