# ERNEST PERRY *vs.* NEW ENGLAND TRANSPORTATION COMPANY.

### JANUARY 31, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J.   This is an action of trespass on the case for negligence. A jury in the superior court returned a verdict for the plaintiff in the sum of $6500. The defendant filed a motion for a new trial on the grounds that the verdict was against the law and the evidence and that the damages were excessive. The trial justice denied the motion on the condition that plaintiff remit all damages in excess of $5000. The plaintiff filed such remittitur and the defendant thereupon excepted to the denial of its motion. The case is here on that exception and eleven other exceptions to rulings of the trial justice during the trial. However, five of those exceptions were neither briefed nor argued and, therefore, they are deemed to be waived. The remaining seven exceptions will be identified and discussed in the order in which they appear in defendant's brief.

The twelfth exception is to the denial of the motion for a new trial. Under that exception defendant urges two points:

(a) that the plaintiff failed to prove by a fair preponderance of the evidence that defendant was guilty of negligence; and (b) that the damages awarded by the jury even as reduced by the court are excessive. A discussion of these contentions requires a brief summary of the salient parts of the evidence. We shall first discuss (a) and then (b).

On March 29, 1943, at 9:43 p. m., defendant's bus collided with a hook-and-ladder truck of the Pawtucket fire department at West avenue and Cedar street in that city. At that time the truck was returning from a fire and was proceeding easterly on Cedar street. The bus was bound for Boston and was proceeding northerly on West avenue. The two vehicles reached the intersection of the streets almost at the same moment. As he reached the intersection, the operator of defendant's bus steered to his right into Cedar street. His bus collided in that street with the forward part of the right side of the truck and pushed it over to its left so that it went off the street, across the sidewalk, over a wall and through a fence on private property abutting on the north side of Cedar street.

The truck was driven by Gerald H. Audette, a member of the fire department of Pawtucket. Plaintiff, a volunteer civilian defense fireman, was riding in a standing position on the right side of the truck and had nothing to do with its operation. When the two vehicles came together, he was "knocked out" by the impact and he did not regain consciousness until midnight at the hospital. The operator of the bus suffered a similar experience.

It appears from the evidence that there was a "stop sign" on Cedar street governing eastbound traffic and that West avenue is a through way, so called. Audette testified that as he approached West avenue he slowed down to between one and two miles per hour; that just before proceeding to cross that avenue, when he was about 15 feet from it in Cedar street, he looked to his right a distance of 50 feet south on West avenue, saw nothing coming and started to cross the avenue at a speed of between three and five miles per hour.

When that part of the truck where he was sitting was three-fourths of the way across West avenue he saw, out of the corner of his eye, the defendant's bus coming toward him. He testified further that the truck was fully lighted and that Lieutenant Matthew J. Gill, who was sitting beside him on the right, was ringing the bell and sounding the siren as the truck approached West avenue and while it was proceeding through the intersection. Gill testified substantially to the same effect and further that the defendant's bus was coming fast and that it hit the truck about 10 feet to the rear of the front bumper or about under where he was sitting and a little toward the back. He also testified that the collision occurred in Cedar street east of the intersection and that no part of the truck was then on West avenue.

Plaintiff, in his testimony, also corroborated Audette and stated further that when the truck was crossing West avenue he saw the dim headlights of a vehicle about 75 to 100 feet to the south traveling about thirty-five to forty miles per hour and that its speed did not change until it hit the truck.

Defendant's evidence is, in large part, widely variant from the above. The operator of its bus testified that just before reaching Cedar street he was traveling north on West avenue about eighteen miles an hour; that his headlights were on but that he observed nothing until he was about five feet from Cedar street, when he saw a red object come out of that street on his left; that there were no lights on it; and that he heard neither a bell nor a siren. He further testified that he applied his brakes and swung his bus to the right into Cedar street to avoid a collision, but the right front of the truck hit the left front of the bus.

The testimony of defendant's operator was substantially corroborated by the operator of a Greyhound bus which was about 300 feet behind defendant's bus as it approached Cedar street. This witness testified that he had his window open at about that time and was listening for a "blackout" signal which he had been informed was scheduled that night at 9:45 o'clock; that he looked north on West avenue and

saw an object without lights come out of Cedar street on his left at a "pretty fast" speed; that it hit the defendant's bus near its left front wheel; and that he heard no bell or siren as the object, which he later learned was the truck, crossed West avenue. He also testified that two headlights, a large destination sign and four lights across the top of defendant's bus were lighted when it left the Providence bus terminal ahead of his bus.

On this evidence we disagree with defendant in its contention that its operator could not legally be found negligent by the jury. In our opinion there was reasonable ground for the jury to find that the bus hit the truck and that the operator of the bus was negligent in driving at a rate of speed that, considering the circumstances, prevented him from controlling the bus so that he would not hit the truck when he saw it coming out of Cedar street. Certain photographs which were taken of the bus and the truck after the collision were introduced in evidence by the plaintiff and they tended to confirm the testimony of the plaintiff and his witnesses that the bus hit the truck and pushed the front of it off the street and onto private property. From the nature of the collision, as thus depicted, when considered in connection with other pertinent evidence, the jury could reasonably have inferred that the bus must have been moving at a high rate of speed. They apparently did so and found their verdict for the plaintiff. The trial justice, in the exercise of his independent judgment as appears from his decision, has approved that verdict. We have found nothing in the record that would warrant our saying his decision on the question of defendant's negligence is clearly wrong and therefore we should not disturb it.

This brings us to a consideration of defendant's second contention that the damages as reduced by the trial justice are excessive. First of all, defendant argues that plaintiff's disability was attributable not to the accident but to arthritis, from which he admitted, at the trial, he was suffering; and, second, that the trial justice in fixing the remittitur

considered plaintiff's loss of future earnings and that there was no evidence on which to base a reasonable computation of such earnings.

We have carefully read the transcript and we find no evidence that plaintiff admitted that he was suffering from arthritis at the time of the accident. It is true that in answering a question plaintiff mentioned arthritis but it did not go to the extent claimed by the defendant. The uncontradicted evidence is that the plaintiff received a severe blow on the head which rendered him unconscious, a cut on the right hand across the knuckles, a fractured left shoulder blade and an injury to the sternum but not definitely determined to be a fracture. Medical treatment for those injuries required forty-seven visits by his physician. He was strapped up with plasters "all the way around" his body for three weeks after the accident and received for his shoulder and chest injuries diathermy treatments for seven months. He was not able to return to work until November 15, 1943. At the time of the trial he could not work more than ten hours a day without having his left arm become useless. Because of this he was unable to work overtime, which overtime work was available to him. His physician testified that there was a limitation of motion in plaintiff's left shoulder which caused him to tire readily when using his left arm.

We think it is clear from this evidence that plaintiff's injuries were the real cause of his disability and his severe and prolonged pain. We therefore find no merit in defendant's contention that plaintiff's disability was attributable to arthritis.

On the question of damages we are of the opinion that, as reduced by the remittitur, they are not grossly excessive. We have carefully considered the evidence and it appears to us that, regardless of the element of loss of future earnings, the plaintiff, up to the time of trial, sustained damages at least to the amount of $3000 as allowed by the trial justice in addition to damages for pain and suffering. The trial jus-

tice's evaluation of the plaintiff's pain and suffering at $2000 is also, in our opinion, justified by the evidence. On the whole, therefore, we cannot say that his conditional approval of the jury's verdict was clearly wrong, from the viewpoint either of liability or damages. Defendant's twelfth exception to the denial of its motion for a new trial is, therefore, overruled.

Defendant's seventh exception is to the trial justice's ruling refusing to strike out the following statement of plaintiff while he was on the witness stand: "We volunteer our service free of charge and get no pay; we risk our lives to get on these trucks for the benefit of the communities, and that is the present from the Government that we get if we get hurt." Defendant contends that such statement was purely voluntary on the part of the witness, was not responsive to any question addressed to him and was clearly prejudicial because it tended to arouse sympathy for the plaintiff in the minds of the jury. Defendant's counsel characterized it as a "flag waving" statement.

The prior examination of the witness had disclosed that he had received, while he was unable to work, certain sums of money from the United States and the city of Pawtucket. When asked to explain the nature of such payments the witness made the above statement. We are of the opinion that in view of the whole examination of the witness on this matter the trial justice did not err in refusing to strike out the statement. We are of the further opinion that no harm resulted to the defendant by the statement. Whether what this fireman received was a "present" is of no importance, as will appear later in our treatment of certain other exceptions of the defendant. Defendant's seventh exception is therefore overruled.

Plaintiff's physician was allowed to answer, over the defendant's objection, the following question: "Was there anything else that made you suspicious of a fracture?" He had previously testified without objection, first, that he had made no definite diagnosis, but he was suspicious that the

plaintiff had a fracture of the sternum, and then he next answered that the plaintiff had the symptoms of a fracture of the sternum. It was not until that examination of the witness was followed by the question: "And what are the symptoms of a fracture in the sternum?" that defendant interposed an objection. Such objection came too late. Whether or not he should have been allowed to testify to his suspicions at all in the first place is another question not raised by defendant's eighth exception. Such exception is, therefore, overruled.

Defendant's sixth, ninth, tenth and eleventh exceptions raise substantially the same question of law and they have accordingly been briefed and argued together by its counsel. It appeared from the evidence that plaintiff had received from the United States $704.90 and from the city of Pawtucket $300. There was no evidence that these sums were in any sense compensation which either government was required to pay the plaintiff. He was an employee of neither but was regularly employed by a private employer. He received nothing from his employer during his disability. On the record here the above sums were apparently gratuities. The trial justice charged the jury "that whatever money the plaintiff may have received from the Government or from the City of Pawtucket by way of reward or rehabilitation assistance cannot be deducted from the amount which the plaintiff has a right to recover, if you find that he has a right to recover."

The weight of authority in this country is to the effect that, in the absence of a statute to the contrary, the amount of recovery from a third person who is responsible for a person's injury is not affected by the mere receipt by the plaintiff of wages or salary from his employer for the period of his injury or a gratuity from a collateral source independent of the defendant. See annotations in 18 A. L. R. 678 and 95 A. L. R. 575. See also *Doherty* v. *Ruiz*, 302 Mass. 145; *Shea* v. *Rettie*, 287 Mass. 454; *Hayes* v. *Morris & Co.*, 98 Conn. 603. In the last case a policeman who was injured

while on duty was paid his regular wages during his disability, but the court held that that fact was not available to defendant in mitigation of damages, citing 1 Sutherland on Damages (4th ed.) §158, where the rule is stated as follows: "Generally there can be no abatement of damages on the principle of partial compensation received for the injury where it comes from a collateral source, wholly independent of the defendant, and is as to him *res inter alios acta.*" The trial justice's charge was, therefore, not prejudicial to the defendant here and all of its exceptions thereto are overruled.

It remains for us to consider one contention made by the plaintiff, namely, that by virtue of general laws 1938, chapter 542, §13, he has the right, notwithstanding that he did not except to the action of the trial justice in reducing the damages, to argue here that the damages awarded by the jury are not excessive. In our opinion that contention is correct, even apart from the express provision of the statute, which was probably enacted to set at rest any doubt about such right. We have accordingly given consideration to the plaintiff's argument that the damages awarded by the jury are not excessive. We are of the opinion, however, that the trial justice was not clearly wrong in reducing them as he did and, therefore, his decision should not be disturbed.

Plaintiff made a further contention that defendant, under its exception to the denial of its motion for a new trial, was entitled to argue to us only the narrow question whether the trial justice erred in not reducing the damages further and nothing else, because its exception goes only to the refusal of the trial justice to grant it a new trial unconditionally. There is clearly no merit in such contention. Defendant's motion for a new trial set out several grounds. It is clear that in denying such motion, if the plaintiff would file a remittitur of $1500 damages, the trial justice overruled all of defendant's other grounds for a new trial. Defendant's exception, therefore, goes to the entire decision and not merely to the trial justice's conditional decision on the ground of excessive

damages. Its exception brings to this court for review the entire decision or ruling of the trial justice, as the case may be, and not merely the ground or grounds on which such decision or ruling is based. *Dunn Worsted Mills* v. *Allendale Mills,* 33 R. I. 115.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict as reduced by the remittitur.

*Higgins & Silverstein, John R. Higgins,* for plaintiff.

*William E. Boyle, William J. Carlos,* for defendant.

