## Gerald H. Audette *vs.* New England Transportation Company.

### APRIL 17, 1946.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Capotosto, J.   This action of trespass on the case for negligence involves a collision in the intersection of Cedar street and West avenue in the city of Pawtucket, at about 9:30 p. m. on March 29, 1943, between a hook-and-ladder truck of the Pawtucket fire department, hereinafter called a truck, which was returning from a fire, and a bus of the defendant company. The jury returned a verdict for the plaintiff in the sum of $3500. Defendant's motion for a new trial was heard and granted. The case is before us on defendant's exception to the denial of its motion for a directed verdict and also on plaintiff's exception to the granting of defendant's motion for a new trial, his other exceptions being waived.

It appears in evidence that Cedar street runs east and west while West avenue runs north and south; that the width of each street from curb to curb is about 24 feet; that

the locality is closely built up, with houses at or close to the sidewalk line at each corner of the intersection; that West avenue is a main artery for traffic between Providence and Pawtucket; and that there is a "stop sign", so called, on Cedar street some short distance before entering the intersection. There was an overhead street light, which was capped on account of wartime requirements, within or close to the area of the intersection. Weather conditions were good and no vehicles, other than those here involved, were parked or moving in the immediate vicinity of the intersection at the time of the accident. We might add that a "blackout", a war defense test in which upon certain signals all lights were to be extinguished and traffic stopped for a short time, was scheduled for that evening and that such test did in fact occur shortly after the collision.

The truck was traveling east on Cedar street and the bus was traveling north on West avenue. Each vehicle was on its own right side of the street upon which it was moving. The length of the truck was approximately 37 feet and that of the bus was about 33 feet. The driver's seat of the truck was about ten feet back from its extreme front end. The truck was struck on its right side, about opposite the driver's seat, by the front left end of the bus as the truck was veered to its left and the bus to its right in the attempt of their respective drivers to avoid a collision. The truck mounted the sidewalk, broke through a wire fence and came to a stop against the porch of the house on the northeast corner of the intersection, with the left front end of the bus in contact with or close to the right side of the truck. Whether the course of the truck immediately following the collision was the result of its own motion or whether it was pushed by the bus to its ultimate position is the subject of conflicting evidence.

The plaintiff in substance testified that as he approached the intersection he reduced his speed to five miles an hour; that when he was 14 or 15 feet from the intersection he first looked to his left and then to his right, at which time he could see into West avenue for a distance of 50 feet to the

south on the east side of that street; that, seeing no traffic approaching the intersection from the south on West avenue, he entered the intersection at the speed of five miles an hour; that when he was about five feet in West avenue, he saw, out of the corner of his eye, the bus some 50 feet away on his right and coming towards him; that he immediately veered to his left, intending to drive onto the northerly side of Cedar street east of West avenue; that when the front of the truck was at or over the easterly line of the intersection, at which time the driver's seat was at a point three-quarters of the way across the intersection, the left front of the bus struck the right side of the truck at a point "even with the driver's seat"; and that the bus pushed the truck to the place hereinbefore described.

The plaintiff further testified that all lights, which, in addition to the headlights, included two red lights, one on each side of the truck, were on; and that the siren was being sounded and the bell rung as the truck approached and entered the intersection. He also testified that he knew there was a stop sign on Cedar street but that he did not see it that night when he came to the intersection. Except for this testimony as to the stop sign and subject to minor variations of no importance, the plaintiff's testimony was supported by the testimony of Lieutenant Gill of the Pawtucket fire department, and by that of two other witnesses who were on the fire truck at the time of the accident.

The testimony of the bus operator in brief is to the effect that he was driving with the window open at his left as he "was expecting to hear the siren for the blackout at any minute"; that he knew Cedar street was a stop street for traffic on that highway; that the two headlights and five smaller lights on the front of the bus were lighted; that there was a small street light with a shade on it at one of the corners; that he entered the intersection at a speed of about 15 miles an hour; that, when the bus was about eight feet in the intersection, "something" that looked like an ordinary truck, without lights and without warning of any kind, came

out into the intersection from the west on the southerly side of Cedar street; and that he then immediately pulled to his right but was unable to avoid the collision.

There are two matters that require attention before we proceed to a consideration of the two exceptions before us, both of which matters have obscured the real issue involved in this case. The first is the defendant's strong reliance upon the fact that, before entering the intersection, the truck failed to come to a full stop on Cedar street, in disregard of some testimony that a stop sign was located at or near the southwest corner of that street at the time of the accident. The defendant treats the evidence in reference to the stop sign as if it were proven that such sign was placed there in compliance with a city ordinance at an intersection with a "through" street.

There is no legal evidence in the record before us showing that West avenue was then designated as a "through" street nor that a "stop sign" was authorized and maintained on Cedar street by an ordinance of the city of Pawtucket for the regulation of traffic, in accordance with general laws 1938, chapter 80, §§2 and 3. The party who seeks to derive a special benefit or advantage from the violation of an ordinance must establish by legal evidence that there was an ordinance and that it was in full force and effect at the time in question. In the situation now before us the stop sign mentioned in the evidence can be given no more weight than as a condition existing at the corner of Cedar street when the plaintiff entered the intersection, which condition is to be considered in the light of all the other surrounding circumstances in determining whether the plaintiff was in the exercise of due care.

The second above-mentioned matter, which was injected into this case as a result of defendant's strong reliance on plaintiff's failure to heed the stop sign, is plaintiff's contention that under G. L. 1938, chap. 88, §10, the bus was under the duty to stop "Upon the approach of any fire apparatus which is *going* to a fire or responding to an alarm". (italics

ours) Plaintiff argues that a truck which is *returning* from a fire or from responding to an alarm is entitled to the benefit of this statute. This contention is without merit. The obvious answer thereto is that if such was the intent and purpose of the statute it would have been easy for the legislature to have so indicated in plain and clear language. See *Schumacher* v. *Milwaukee,* 209 Wis. 43, 47.

We will now consider defendant's exception to the denial of its motion for a directed verdict. In urging this exception it seems to rely on two theories that have been long since repudiated by this court. The first is that the plaintiff's failure to come to a full stop at the corner of Cedar street, in disregard of the stop sign, was negligence *per se;* and the second is that if the plaintiff had brought the truck to a full stop in obedience to the stop sign, and then looked to his right, he would have seen the bus and no collision would have taken place.

This court has repeatedly held that in negligence cases the violation of a statute or ordinance setting forth the rules of the road is not negligence *per se,* but that such violation, if found, is to be used by the court or jury as an aid in determining whether the conduct of the party under examination was in fact negligent. *Oates* v. *Union R. R. Co.,* 27 R. I. 499; *Coughlin* v. *Rhode Island Co.,* 44 R. I. 64; *Andrews* v. *Penna. Charcoal Co.,* 55 R. I. 215; *Dembicer* v. *Pawtucket Cabinet & Builders Finish Co., Inc.,* 58 R. I. 451. This point needs no further consideration.

The defendant also argues as follows: "The plaintiff on failing to prove that his neglect to stop in accordance with the statute was not the proximate or concurring cause of the accident failed to sustain the burden of proof as to his own due care and therefore is not entitled to recover." This argument is but a repetition in negative form and in more subtle language of the same arguments that we have just dismissed as being without merit. Whether the plaintiff's conduct was the proximate or a concurring cause of the accident depended upon a fair consideration of all the circum-

stances existing at that time and place rather than on any one fact singled out and separated from the other material facts in evidence. See *Le Bavin* v. *Suburban Gas Co.*, 45 A. 2d 664 (N. J.), where the facts are very similar to those in the instant case.

Furthermore, the above statement as to the plaintiff's neglect to stop "in accordance with the statute" is not pertinent to the circumstances in this case. The only statute which the defendant mentions in discussing its present contention is G. L. 1938, chap. 80. That statute is an enabling act authorizing a city or town council to designate any local highway as a "through way" and, in case it does so, it is "authorized and required" to place and maintain a "stop sign" at or near the property line on every public highway intersecting or joining the "through way". As we have already stated earlier in this opinion, there is no evidence in the record before us that the city council of Pawtucket ever exercised the authority vested in it by the statute. Therefore, the statute is of no assistance to the defendant in the circumstances of this case.

In our judgment, the conflicting evidence in the instant case presented a clear question of fact for the jury as to whether the plaintiff was guilty of any negligence which contributed to the accident. Defendant's motion for a directed verdict was properly denied and its exception to such decision by the trial justice is therefore overruled.

The plaintiff's exception to the granting of defendant's motion for a new trial presents a closer question, for in this instance our well-established rule requires us to find the trial justice clearly wrong before we will disturb his decision. His rescript shows that he agreed with the jury as to the defendant's negligence but that he disagreed with them as to the plaintiff's due care. Omitting what we deem immaterial, the rescript reads as follows in reference to the plaintiff's conduct at the intersection: "We believe plaintiff was travelling slowly as he approached West Avenue, which he must have known was a *through street*. It avails him nothing to

say he looked and saw nothing. It was his duty before proceeding into the intersection *to stop* and look to his right when looking would have been efficient. Had he done so, in our opinion, he would have seen the truck (sic). Further, it is our opinion that plaintiff's failure to observe the *stop sign and heed it,* under the circumstances, materially contributed to causing the accident. Had he *stopped* as he came to West avenue and observed what was there to be seen, we believe the accident would have been averted. . . . We are not holding that the operator's failure to observe the stop warning is negligence per se, but, taken together with all the other evidence in the case, we believe it all adds up to a failure to exercise reasonable care and caution by the plaintiff under the existing conditions." (italics ours)

After carefully considering this general language of the rescript we are convinced that the conclusion of the trial justice is fundamentally based on the premise that because the plaintiff started to cross West avenue, which he calls a "through street", without coming to a full stop in obedience to a "stop sign" on Cedar street, he therefore was guilty of negligence. As we have already pointed out, there is no evidence in this case that at the time of the accident West avenue was designated as a through street; nor that the stop sign in question was placed and maintained on Cedar street by competent authority in compliance with statutory requirements, so as to impose on the plaintiff the legal obligation to come to a full stop. Giving full credence to the statement of the trial justice that he was not holding that the plaintiff's failure to observe the stop sign warning was negligence *per se,* it appears to us that he in effect applied that very rule or at least gave undue weight to the violation of an alleged ordinance. In view of the strong reliance he places upon matter not in evidence, that is, plaintiff's legal obligation to come to a full stop, we can not give his decision on the point under consideration the weight that is ordinarily accorded to a decision of the trial justice on a motion for a new trial.

Such being the case, it becomes necessary for us to examine independently the transcript of the evidence without the assistance which we ordinarily receive from the findings of the trial justice on a motion for a new trial. This brings the case under the well-established rule of a court of last resort requiring that we examine the evidence to determine whether or not in our judgment it strongly preponderates against the verdict. *Bradley* v. *Brayton,* 61 R. I. 44. Applying this rule to the conflicting evidence of substantially equal weight in the instant case, we are unable to say that the evidence on the question of plaintiff's due care strongly preponderates against the verdict. In these circumstances the verdict of the jury on the issue of liability must stand.

Following his conclusion that the plaintiff was not entitled to recover for the reasons which we have hereinbefore considered, the trial justice in his rescript proceeded to examine carefully the question of damages and decided that all of the verdict in excess of $1000 was grossly excessive. This conclusion, if fairly based on a consideration of competent evidence, is entitled to weight. From our examination of the evidence we also are of the opinion that the damages are grossly excessive.

The plaintiff's doctor, who examined him two days after the accident, testified that his condition then was one of "nervous shock with hysterical manifestations" but no permanent injury; that in his judgment the plaintiff definitely had improved between the date of the accident, March 29, 1943, and July 24, 1943, at which time "he could carry on without any further treatment"; and that on March 1, 1945, when the plaintiff next consulted him for an old back injury entirely unrelated to the accident, he found him "still somewhat agitated." The doctor's bill was $19.

There is no evidence of any financial loss to the plaintiff as a result of his leaving the fire department for other employment in July 1943. The Firemen's Relief Association paid a hospital bill of $16, which was the charge for an examination of the plaintiff immediately after the accident,

and the city of Pawtucket paid him his wages, or $403, for the thirteen weeks that he was unable to work. Since these two sums were thus paid, they were not included in the $1000 which the trial justice fixed as the amount of damages.

In *Perry* v. *New England Trans. Co.*, 71 R. I. 352, 45 A. 2d 481, we held that, in the absence of a statute to the contrary, the amount of recovery from a third person who is responsible for a person's injury is not affected by the mere receipt by the plaintiff of wages or salary from his employer for the period of his injury or a gratuity from a collateral source independent of the defendant. After due consideration of the evidence in the instant case, we are of the opinion that while the verdict was excessive as rendered, yet because these payments, in the total sum of $419, were excluded by the trial justice in fixing the damages at $1000, that sum should be added to the $1000, making the verdict as reduced by us $1419.

The defendant's exception is overruled. The plaintiff's exception to the granting of a new trial is sustained, and the case is remitted to the superior court with direction to grant the defendant a new trial, unless the plaintiff shall, on or before April 29, 1946, file in the office of the clerk of the superior court a remittitur of all of said verdict in excess of $1419. If such remittitur is filed, the superior court is ordered to enter judgment on the verdict as reduced by the remittitur.

*Crowe & Hetherington, Thomas Hetherington,* for plaintiff.

*William E. Boyle, William J. Carlos,* for defendant.