LILLIAN E. GEABER, A*dm'x d.b.n.* vs. SANFORD C. SPINK, *Ex'r.*

MAY 11, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J.   This proceeding began with the filing by Emma I. Geaber of her claim for $27,003.33 and interest against the estate of her deceased husband Nicholas F. Geaber.   At the time of such filing she was administratrix of his estate, but during her life she did nothing to have her claim determined in accordance with general laws 1938, chapter 578, §10.   After her mother's death without her having made a final accounting, Lillian E. Geaber, a daughter, was ultimately appointed administratrix *d.b.n.* of her father's estate.   See *Geaber* v. *Wakefield Trust Co.,* 76 R. I. 337.

The claimant's son by her first marriage, Sanford C. Spink, was appointed executor of her will and in that capacity prosecuted the instant claim which his mother had filed. After a hearing in the probate court of the town of Narragansett a decree was entered allowing the claim in the amount of $7,300. From that decree an appeal to the superior court was taken by Geraldine Geaber Barnes, the claimant's other daughter by her second marriage, as an heir of her father's estate. Following a trial in the superior court a jury returned a verdict disallowing the entire claim and thereafter the trial justice denied the executor's motion for a new trial. The case is before this court on the latter's bill of exceptions to that decision and to certain rulings during the trial.

It is not advisable to state in detail all the evidence which included numerous exhibits of bank records, checks and other instruments, and therefore only a general summary will be indicated in order to understand these exceptions. The evidence in favor of the claimant tended to show the following facts. Emma I. Geaber, the claimant, received by gift from her first husband, Sanford C. Spink, certain money, bank accounts, stocks, bonds and mortgages totaling about $35,000, in addition to the title to a farm where they lived.

Shortly after her husband's death in May 1913 the claimant met Nicholas F. Geaber, who then was a partner with his brothers in a rendering business, and at that time his share of the income from that business, according to an income tax return, was about $536 per year. At his solicitation the claimant loaned him $2,000 in November 1913 and $597 about three weeks later. In each instance, as he could not write English, he signed in Arabic a promissory note that carried interest at 6 per cent. These loans were repaid prior to May 1914, when the claimant and Nicholas were married. From such marriage two daughters were born, namely, Lillian E. Geaber, referred to herein as Lillian, who is administratrix *d.b.n.* of her

father's estate, and Geraldine Geaber Barnes, who was termed the "intervenor" and is here referred to as Geraldine. Sanford C. Spink, the claimant's son by her first marriage and the executor of her will, will be referred to generally as Sanford or the executor.

Immediately after claimant's marriage to Nicholas he began to borrow further sums from her. Withdrawals by her from her own bank accounts during the first two months after the marriage were traced into the checking account of Nicholas to the amount of approximately $15,000. At various times thereafter other loans were made by claimant until they amounted to $26,100. Some of this money was used to build a house, the title to which ultimately was recorded in his name alone and so remained until his death. On February 1, 1934, less than two years prior to his death, he borrowed a further sum of $903.30 for stone crushing equipment for his other business, and in the presence of Lillian and the claimant acknowledged his previous indebtedness and promised to repay within a year and a half or two years the total of all the loans. In the claim, which was written and filed personally by the claimant, these loans were itemized and amounted to $27,003.33 with interest to be added at 6 per cent.

The gist of the testimony of Lillian and Sanford is that in the years during which they lived at home they heard frequent discussions between Nicholas and their mother in connection with these loans and his business; that from their own knowledge together with the records in evidence they were familiar with the making and purpose of many of the loans; that their mother, who was entirely honest, had told them of the other loans; that Lillian herself was present in 1934 when her father expressly acknowledged his previous indebtedness and promised the claimant he would repay the total amount of all loans; and that Sanford, though familiar with many phases of the different business interests of Nicholas, including certain of the loans and the disposition thereof by Nicholas, was not present when

the last loan and promise were made as described by Lillian and therefore could give no testimony concerning them.

On the other hand Geraldine did not testify. She relied upon the bank and other records in evidence and certain testimony given by Lillian, Sanford and other witnesses in cross-examination. These included the record of an inventory filed by Sanford as executor of the claimant's will which showed personal property of the value of $43,000, apart from the instant claim. Geraldine argues that the evidence and inferences therefrom show in effect that when making every admitted loan to Nicholas before marriage, as well as to Geraldine for her divorce, the claimant had obtained a promissory note in each instance, whereas no note or written instrument acknowledging any of the alleged loans was produced to support the instant claim; and that certain loans to Nicholas were claimed as if he then were in need, whereas at those times his bankbook showed that he had considerable more on deposit than the amount of such alleged loans.

Moreover, she claims it was shown that in February 1934 when Nicholas is said to have borrowed an additional sum of $903.30 on his promise to repay the full amount of that and all previous loans, there was or should have been a considerable part of $22,092.65 in his bank account No. 299, the withdrawal and expenditure of which were not specifically accounted for by any bank record or written evidence, although the claimant had complete custody and authority over all of Nicholas' bankbooks and records during his lifetime as well as thereafter; and that in any event during the very next year, that is, in 1935, he had money enough apparently to loan other persons on the security of their mortgages amounting to $7,000. Finally Geraldine points out that the claimant received $35,000 personal property from her first husband; that if she loaned approximately $27,000 thereof to Nicholas as claimed she would have only about $8,000, whereas she

died leaving at least $43,000 personal property; and that the only reasonable inference, in the absence of any convincing explanation to the contrary, is that she must have received payment or satisfaction of these loans in order to have $43,000 in the inventory of her estate.

It was further noted by Geraldine that after the death of Nicholas the claimant did not file her claim within the ordinary statutory period, but had to obtain permission to file it out of time; that moreover the undisputed evidence showed claimant took no action whatever during the remaining ten years of her life to prove and collect her claim; and that this conduct is so wholly inconsistent with action normally expected of the owner of a legitimate claim in such a large amount that it contradicts the validity of the instant claim. On all the evidence the jury found against the claimant and thereafter the trial justice in a rescript, wherein he discussed the verdict, the law and the evidence, denied the executor's motion for a new trial.

The executor's first exception is to the denial of his motion for a new trial. He contends that the trial justice in passing upon that motion applied a different rule of law from the one he had given to the jury in his charge; that he failed to pass his independent judgment on the evidence; that he at least overlooked or misconceived certain evidence in relation to the statute of limitations; and that the claim as filed was supported overwhelmingly by uncontradicted evidence without inconsistencies.

In our opinion certain expressions in the trial justice's decision, if considered alone and apart from their context, might give an impression that he had applied a different rule of law from that which he gave to the jury and that he had overlooked in part certain evidence in relation to the statute of limitations. For example, as Sanford points out, the trial justice did indicate that he "expected a verdict," meaning perhaps for claimant, but he also added that such expectations in that matter did not prove the claim, and he finally concluded that on the evidence the

jury was warranted in coming to a contrary conclusion. When he further stated "Perhaps the Jury was staggered by the amount of the principal plus the interest which would have been as much again," he was not then approving that as a good ground for the verdict, as Sanford seems to argue. He used that expression to emphasize the other part of the context to the effect that he could not know precisely what motivated the jury in coming to its verdict and therefore must appraise it generally. The jury made no special findings.

Moreover, when the trial justice again stated "There was no way, as I could see, where the Jury could believe Emma I. Geaber in part and disbelieve her in part. * * * they either had to give all or none of it. * * * It was all one piece," he was not applying a different rule of law nor intending to say that the jury were bound to find all or nothing as a matter of law. He had carefully instructed them to examine each item of the claim and return its verdict accordingly, but at this time on a motion for a new trial he was trying to express his own reaction upon an independent examination of the evidence so far as it related to the claim as filed and the jury's verdict.

The executor also maintains that the trial justice misconceived part of the evidence when he stated that *all* these loans were barred by the statute of limitations if the jury did not believe "the testimony of Lillian E. Geaber, that her father had said, 'I know that I owe you the $26,000,' * * * And 'I will pay you if you let me have the $900.00.'" According to the executor, the loan of $903.30 on February 1, 1934 and one other loan in the sum of $700 on October 22, 1930 would not be barred by the statute in any event, and therefore the trial justice must have overlooked or misconceived this part of the evidence. In our judgment, however, if Lillian were not believed the bulk of the claim would have been barred by the statute, as the trial justice noted, and in the circumstances even those two later loans would not be proved convincingly as they too

depended almost entirely on her testimony without other corroboration.

When the decision is read as a whole, giving reasonable effect to the continuity of thought that runs through it, we get the impression that the trial justice, while using some unnecessary language which might be somewhat misleading if taken out of context, was intending to convey the meaning that, even if he personally might have expected a verdict for the claimant, nevertheless on an independent examination of the evidence he was unable to say that it was not reasonably open to another construction consistent with the jury's conclusion. In other words, he seems to have found that the question was one primarily of fact depending largely upon the credibility of Lillian in the last analysis, and that the evidence submitted to different reasonable inferences which were so nearly balanced that he could not say the verdict was against the preponderance of the evidence.

However, to avoid any uncertainty that might arise from doubtful expressions or unnecessary speculation in the trial justice's decision, we have made an independent examination of the evidence. In so doing, however, without the aid of his decision we are bound by a different rule whereby in such circumstances the verdict is not to be set aside unless it is found to be against the great weight of the evidence. *Mahoney* v. *Smith,* 78 R. I. 56; *Audette* v. *New England Transportation Co.,* 71 R. I. 420; *Bradley* v. *Brayton,* 61 R. I. 44.

For such purposes we may assume that the claimant established clearly that all the money furnished by her constituted loans to Nicholas rather than gifts or contributions to a mutual enterprise. In the absence of a new promise, however, the bulk of the claim, that is, all of it with the possible exception of the last two loans, $903.33 and $700, totaling $1,603.33, would have been barred by the statute of limitations. The only evidence to take such items out of the statute is found in Lillian's

testimony that on February 1, 1934 her father obtained new loans and then and there acknowledged his whole indebtedness and promised to repay it all within a year and a half or two years. If this testimony was not believed, the jury would have been justified not only in barring the bulk of the claim under the statute but also in denying the last two loans, since they, too, largely depended on the uncorroborated testimony of Lillian. The jury had the benefit of seeing and hearing her as she testified on this and other issues, an advantage which we do not have.

On the other hand, if the jury believed that all the loans were made in accordance with the claim as filed and that the promise to repay was made by Nicholas, as Lillian testified, there still remained the question whether these loans had not been repaid or satisfied in some way. The executor's failure to more specifically account for the disposition of more than $22,000 in Nicholas' account in November 1927 and to explain adequately how her estate could have amounted to $43,000 personal property as inventoried, unless she had been reimbursed for these loans in some form, tends to support the jury's verdict. Moreover, the conduct of the claimant herself could have been considered as inconsistent with any valid claim. She not only failed to file this large claim promptly; but after obtaining permission to file it out of time she did nothing whatever during the rest of her life, more than ten years, to prove it in accordance with the requirements of the statute. During all that time she was administratrix of the estate of Nicholas, had certain authority over his books and accounts, and knew there was money with which to pay it. The jury would be justified in considering such conduct together with other evidence in passing on the validity of the claim.

While Sanford testified concerning the hypothecation of bankbook No. 299, which showed $22,092.65 in November 1927, he did not show by any corroborative records from the bank or otherwise when that money was withdrawn

and how it was spent. The jury might have considered that his testimony in that respect was too general and not sufficiently clear and convincing to support a claim against the estate. For all that is in the evidence the account may have been hypothecated for a small debt that was paid out of other money and not out of that account. The failure to trace this large sum through bank records or receipts, even though explained to some extent by Sanford, could have been contrasted with the diligence in tracing the early deposits from claimant's account to that of Nicholas. Without some specific explanation it left a gap which the jury could have considered as inconsistent with the continued existence of a valid claim. In any event from our examination of all the evidence we are of the opinion that it is open to different reasonable inferences and does not require the conclusion that the claim was valid and unpaid. While the jury might have accepted the executor's explanation and evidence on this point, general though it was, we cannot say from this record alone that a contrary conclusion is against the great preponderance of the evidence, especially having in mind the burden on the claimant's executor in prosecuting a claim against an estate.

But the executor finally contends that the inventory filed in claimant's estate, which is important in certain of the above considerations, was erroneously admitted in evidence. We do not agree with this contention. Of necessity the case was tried largely upon the testimony of interested witnesses as to statements of deceased persons. In the circumstances the evidence was relevant, at least on the issue whether the loans were ever repaid or otherwise satisfied, especially since the claimant had access to and supervision of the bankbooks, accounts and checks of Nicholas both during his lifetime and after his death. This exception is overruled.

The executor also contends that it was error not to admit the evidence described in his exhibit numbered 16 for identification. In our judgment the answer to this

is that after the first ruling refusing their introduction the substantial and relevant items thereof were testified to immediately without objection. The later refusal to admit the envelope with its penciled notes of various items, which were apparently designed to show claimant's possession of some $35,000 which was available to loan to Nicholas, appeared elsewhere in evidence at least in total amount and was not challenged. The rejection of such evidence therefore could not have prejudiced the claimant's executor and the error, if any, was harmless. This exception is overruled.

All of the exceptions of the executor are overruled, and the case is remitted to the superior court with direction to enter a decree reversing the decree of the probate court in accordance with the verdict.

*William H. Leslie, Jr.*, for Geraldine E. Barnes.

*C. Bird Keach*, for Sanford C. Spink, Executor.