259 A.2d 408.

RALPH ALDCROFT *vs.* THE FIDELITY AND CASUALTY
COMPANY OF NEW YORK.

DECEMBER 4, 1969.

PRESENT: Roberts, C. J., Paolino, Powers and Kelleher, JJ.

312

ROBERTS, C. J. This is a civil action brought to recover damages for injuries sustained by the plaintiff as the result of a collision between two motor vehicles. The case was tried to a jury in the Superior Court, a verdict was returned for the plaintiff in the amount of $5,000 plus interest and costs, and judgment entered therefor. Subsequently the defendant's motion for a new trial was denied, and it is now in this court prosecuting an appeal from the judgment.

At the time of the collision plaintiff Ralph Aldcroft, a member of the Pawtucket police department, was a passenger in a police cruiser responding to an emergency call to investigate a traffic accident. The police cruiser was being operated by another member of the police department, Frank Reddington. It is not disputed that plaintiff had been issued a policy of insurance by defendant, in which he was the named insured. The policy included coverage for injuries received by the acts of uninsured motorists. The plaintiff, claiming that the operator of the other involved car was an uninsured motorist as defined under

the terms of the policy, brought the instant action against defendant.

The police cruiser was proceeding east on the left-hand side of Church Street, and the operator testified that the emergency light was flashing and that the siren was being sounded. It is conceded that, when the police cruiser was approaching the intersection of Pine and Church Streets, the traffic light which controls traffic at the intersection was showing a red signal for traffic approaching on Church Street. The operator of the police car testified that he saw the red signal, slowed down before reaching the intersection, and then proceeded to enter the intersection against the red signal. At that time he observed that a motor vehicle being operated by Donald Wiberg north along Pine Street was also entering the intersection. Patrolman Reddington, the operator of the police cruiser, testified that he attempted to avoid the collision by turning to his left but was unable to do so. It is apparently conceded that, at the time of the collision, the traffic light was showing a green signal for traffic moving in a northerly direction along Pine Street.

We cannot agree with defendant's contention that plaintiff has failed to prove the negligence of Wiberg in the operation of his motor vehicle at the time of the collision. The transcript discloses that as Wiberg approached the intersection he observed that a line consisting of several cars had come to a halt at the green light. Assuming, he testified, that the first car in the line had "stalled," he proceeded to pass these cars, moving toward the green light and entering the intersection at a low rate of speed. There is also evidence that the siren of the police cruiser was being sounded as it approached the intersection. This evidence, in our opinion, would be sufficient to warrant the jury's finding that Wiberg was negligent in the operation of his vehicle at the time of the collision.

314

Neither do we agree with the contention of defendant that the negligence of Wiberg was rendered remote by the intervening act of negligence of a responsible third person —in this instance, the operator of the police cruiser. It is well settled, as defendant contends, that the negligent act of a defendant may, by reason of the intervening negligence of a responsible third party, be rendered remote and relieve the defendant of liability. *Reek* v. *Lutz,* 90 R. I. 340, 158 A.2d 145; *Floyd* v. *Turgeon,* 68 R. I. 218, 27 A.2d 330.

However, this court noted in *Denisewich* v. *Pappas,* 97 R. I. 432, 437, 198 A.2d 144, 147: "* * * it is equally well established that an intervening act will not insulate a defendant from liability if his negligence was a concurring proximate cause which had not been rendered remote by reason of the secondary cause which intervened." We went on to say that the test in these cases must be whether the intervening act could reasonably have been foreseen as a natural and probable result of the original act of negligence of the defendant. If it could have been so foreseen, the intervening negligence is not so remote as to prevent the original act from being considered at law as merely a concurring cause of the injury. In the instant case the intervening negligence upon which defendant relies is that of the operator of the police cruiser. In the circumstances that exist in this case it seems clear that Wiberg could be charged with reasonably foreseeing that another vehicle would be moving along Church Street into the intersection.

The defendant has urged also that it was error to overrule its objection to an inquiry as to whether, after the collision had occurred, a bystander had asked Wiberg, "What is the matter, didn't you hear the siren?" When the objection to this question was overruled, he answered: "That's correct, she did say, 'What is the matter, didn't you hear the siren?' And I said, 'I heard nothing, I saw nothing.'"

It is our opinion that, if the overruling of the objection to the admission of this evidence was error, it was certainly not prejudicial. Testimony was adduced through the operator of the police cruiser that he was sounding the siren at the time he approached and entered the intersection and that, in fact, he had turned it off after the impact. It is clear then that other testimony was adduced without objection to the effect that the siren was being sounded at the time of the collision. In such circumstances we hold that overruling of the objection in this case did not constitute prejudicial error. *Geaber* v. *Spink,* 78 R. I. 198, 80 A.2d 882; *Isherwood* v. *Vendettuoli,* 73 R. I. 437, 57 A.2d 171.

We turn to consider defendant's contention that the damages awarded plaintiff should be reduced by the amount paid him as wages and medical expenses by his employer, the city of Pawtucket. In the course of trial, plaintiff testified that he had lost no wages during the period of his incapacity, and the court sustained objection to a question as to whether he had been paid medical expenses by the city. In its charge the court instructed the jury that the payment of wages during the incapacity of plaintiff was without materiality on the question of damages. The defendant now urges that the trial justice erred in so instructing the jury.

In this state we have adhered to the collateral source rule, so called, setting it out in *Perry* v. *New England Transportation Co.,* 71 R. I. 352, 359, 45 A.2d 481, 485. In that case we said: "The weight of authority in this country is to the effect that, in the absence of a statute to the contrary, the amount of recovery from a third person who is responsible for a person's injury is not affected by the mere receipt by the plaintiff of wages or salary from his employer for the period of his injury or a gratuity from a collateral source independent of the defendant." We reiterated this

rule in *Audette* v. *New England Transportation Co.,* 71 R. I. 420, 46 A.2d 570, and in *Coia* v. *Eastern Concrete Products Co.,* 85 R. I. 128, 127 A.2d 858, in each case again emphasizing that we follow the weight of authority, there being no statute in this state to the contrary. In *Oddo* v. *Cardi,* 100 R. I. 578, 218 A.2d 373, we held that the collateral source rule is to be given a comprehensive application.

We perceive no reason why we should modify the position we take with respect to the collateral source rule unless the legislature, in express terms or by necessary implication, so requires. We do not understand that defendant here is arguing that the legislature has by statute provided for some abrogation of the collateral source rule. In its brief defendant directs our attention to the provisions of G. L. 1956, §45-19-1,[1] as amended by P. L. 1960, chap. 126, sec. 1. This statute requires the municipalities of this state to pay to firemen or policemen who are injured or become ill in the line of duty their full salary and medical expenses during their period of incapacity. It does not, however, argue, as we understand its brief, that this statute was intended by the legislature to mandate abandonment or modification of the collateral source rule. While we hesitate to dignify a hoary cliche by quoting it as a rule of law, it is our opinion

---

[1]Section 45-19-1 reads: "Whenever any police officer or fireman of any city or town shall be wholly or partially incapacitated by reason of injuries received or sickness contracted in the performance of his duties, the respective city or town by which said police officer or fireman is employed, shall, during the period of such incapacity, pay such police officer or fireman the salary or wage to which the said police officer or fireman would be entitled had he not been so incapacitated, and in addition thereto shall pay such medical, surgical, dental, optical, or other attendance or treatment, nurses and hospital services, medicines, crutches and apparatus for such period as is necessary. As used in this section, the term 'police officer' shall mean and include any chief or other member of the police department of any city or town, regularly employed at a fixed salary or wage. As used in this section, the term 'fireman' shall mean and include any chief or other member of the fire department of any city or town, regularly employed at a fixed salary or wage."

that if, in enacting §45-19-1, the legislature had intended to abrogate the collateral source rule, it would have said so in express terms.

The defendant argues also that the amount of damages plaintiff may recover under the insurance contract is limited by a provision thereof entitled "Limits of Liability." This clause of the contract provides that damages payable thereunder for the injuries sustained as a result of the negligent act of an uninsured motorist are to be reduced by "* * * the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law."

The precise question, then, is whether an insurer may, by the terms of the contract of insurance offered pursuant to the uninsured motorist coverage statute, §27-7-2.1, abrogate the limits of the liability established by that statute. The statute, by reference to the provisions of §31-31-7, establishes the limit of liability thereunder at $10,000 for bodily injury or the death of one person in any one accident. The defendant, however, contends that, where the parties have entered into a contract of insurance providing that the amount of damages awarded an insured thereunder is to be reduced by any amounts paid the plaintiff under a workmen's compensation act, a disability benefits law, or another similar law, the contract limitation as to liability is controlling. In this respect, defendant relies upon its contention that §45-19-1 is either a compensation law or a similar law, and, therefore, the salary and medical expenses paid to plaintiff by the city of Pawtucket are to be deducted from the jury's verdict.

Whether or not §45-19-1 is to be characterized as a workmen's compensation act or a disability benefits law, we cannot agree with defendant's contentions. We have held that contracts provided by insurance carriers must invoke those

constitutionally valid conditions imposed by the legislature. *Allstate Insurance Co.* v. *Fusco,* 101 R. I. 350, 223 A.2d 447. We had under consideration in that case the same statute that is now before us, §27-7-2.1[2] We there held that such contracts are to be construed in the light of the public policy as mandated by the legislature and binding on insurance carriers licensed to do business in this state. In enacting this statute, the legislature intended that, as a matter of public policy, protection should be given the named insured in such policies against economic loss resulting from injuries sustained by reason of the negligent operation of uninsured motor vehicles or hit-and-run motor vehicles.

To implement the public policy so stated, the statute mandates that no policy of liability insurance against bodily injury or death shall be delivered or issued for delivery in this state unless coverage is provided therein in the limits for bodily injury or death set forth in §31-31-7, that is, $10,000 for bodily injury to one person in any one accident, for the protection of the person insured thereunder. This protection runs against the owners or operators of uninsured motor vehicles and requires that the named insured within the policy to be issued have the right to reject such coverage.

We are persuaded that, in enacting §27-7-2.1, the legislature intended to give an insured motorist operating on the

---

[2]Section 27-7-2.1 reads: "No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto. in limits for bodily injury or death set forth in §31-31-7 as amended, under provisions approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom, provided that the named insured shall have the right to reject such coverage."

public ways protection against the economic loss that might result from the negligent operation of uninsured motor vehicles. The protection was to be in an amount of at least $10,000 for bodily injury or death in the case of one person in any one accident, and the legislature commanded that this protection be made available to every insured to whom a policy is issued for liability insurance unless specifically rejected. Nothing in the statute warrants the issuance of a policy providing for such protection of the insured motorist in any lesser amount or in any alternative amount. The coverage directed in the statute must be given unless the insured rejects it in specific terms. We certainly are unable to agree that it was ever intended to provide a benefit for the insurance carrier.

The coverage in the policy delivered to the insured in the instant case is different from that mandated in the statute. It requires the insured, if he desires to accept the policy so issued, to agree that any award of damages or amount paid him under a workmen's compensation or a similar piece of legislation be deducted from any award of damages he may recover from the tort-feasor. Nothing in the statute, in our opinion, confers upon the insurer any authority to require an insured to accept a policy proffered for delivery which contains such a limitation upon the mandated statutory coverage. In *Standard Accident Insurance Co.* v. *Gavin, Fla.*, 184 So.2d 229, the Florida court, in considering a similar statute and a policy containing a similar provision for a reduction of any award recovered from the tort-feasor, held that the insurance companies are without power to insert provisions in a policy that would restrict the coverage afforded therein in a manner contrary to the intent of the statute.

Because we take this view, we find that the provisions of the policy limiting the liability of the insured as is therein provided are, by virtue of §27-7-3, void, and the policy

is to be construed as·having included within its terms coverage against damage by uninsured motorists up to the extent of the statutory limit, that is, $10,000 for bodily injury to one person in any one accident. It is our conclusion, then, that the court did not err in instructing the jury that the amount of wages or medical expenses paid plaintiff here by the city of Pawtucket is without materiality in the instant case.

The defendant further argues that Wiberg was not an uninsured motorist as that phrase is defined in the policy of insurance issued by defendant. The policy provides that defendant shall "* * * pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile * * *." An uninsured automobile is therein defined as one with respect to which there is "* * * no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile * * *."

The defendant, in pressing this argument, directs our attention to the transcript, wherein it appears that at the trial there was an oral agreement that Wiberg had, subsequent to the accident, posted a bond in the amount of $3,500 with the Registry of Motor Vehicles, apparently pursuant to the terms of the Safety Responsibility Act of the State of Rhode Island, chap. 31 of title 31. It argues that the bond was given as security for the payment of damages for the personal injury which might have resulted from the accident through fault on the part of Wiberg. It appears from the transcript that plaintiff conceded that such a bond had been filed but that he denied that it was material to any issue raised in the case.

The defendant appears to urge that if Wiberg was partially insured at the time because of this bond, although it was procured subsequent to the time of the accident, this

bond would be available for the payment of claims arising out of the accident. It seems to us that this is to urge that the most plaintiff can recover, suing under the uninsured motorist provision of the insurance policy, is the amount of $1,500 and that he must look to the bond to recover the remainder of the award given him by the jury. We are unable to agree with this contention. The issue with which we are confronted is whether the subsequent posting of the liability bond, made applicable by its terms to the prior accident, operates to make Wiberg a partially insured motorist at the time of the accident and, therefore, at that time not an uninsured motorist.

The contract provisions are to be interpreted in the light of the purpose for which the legislature enacted §27-7-2.1. *Allstate Insurance Co.* v. *Fusco, supra.* The legislature, in our opinion, enacted this statute for the purpose of providing, as a matter of public policy, protection of the named insured in policies to be issued for protection against financial loss resulting from the operation of uninsured motor vehicles. It clearly intended that this protection was to be included up to the amount of $10,000 for a single person *in the policy that was to be issued pursuant to the statute* and was to become effective if not rejected by the named insured. In other words, the legislature, in our opinion, intended that the protection to be given to the motorist by an uninsured motorist clause was to be contained in the policy to be issued for the convenience of the named insured.

The provision set out by defendant in its policy issued to this plaintiff defines an uninsured motor vehicle as one with respect to which no liability policy is "applicable at the time of the accident." It is well established in this state that words used in a contract of insurance are to be given their plain, ordinary, and usual meaning in seeking the intent of the parties. *Nagy* v. *Lumbermens Mutual*

*Casualty Co.,* 100 R. I. 734, 219 A.2d 396. If we apply this principle for the interpretation of contracts to the provision here under consideration, it is our opinion that the term "applicable" in the circumstances means an uninsured vehicle is one where no liability bond was "in effect" at the time of the accident. For this reason, we are of the opinion that the contract contemplated that a vehicle would be an uninsured vehicle within its terms when no liability insurance was in effect at the time the accident occurred.

The defendant, in urging a contrary view, relies on the case of *Allstate Insurance Co.* v. *Fusco, supra,* a case that is clearly distinguishable, in our opinion, from that which is now before us. In *Fusco* coverage against liability for bodily injury was in effect at the time the accident occurred but in a lesser amount than that prescribed in §27-7-2.1. We held that the tort-feasor was an uninsured motorist, at least to the extent of the deficiency in the coverage, and, therefore, was liable as an uninsured motorist under the terms of the policy. It must be realized, however, that in *Fusco* the trial court had held that the tort-feasor was not an uninsured motorist under the terms of the contract which defined an uninsured motor vehicle. Therefore, what we were really holding was that the tort-feasor was an uninsured motorist, at least to the extent that the coverage in effect at the time of the accident was less than the statutory minimum, and could be sued as such under the terms of the policy. In our opinion, *Fusco* does not stand for the proposition that insurance against liability obtained subsequent to an accident will operate so as to change the status of the tort-feasor from that of an uninsured motorist at the time of the accident to one who was partially insured at the time of the accident.

The appeal of the defendant is denied, and the judgment is affirmed.

Joslin, J., did not participate.

*John F. McBurney*, for plaintiff.

*Graham, Reid, Ewing & Stapleton, Edward J. Regan*, for defendant.