ESTHER MARTINO *vs.* PHYLLIS SIMONELLI *d.b.a.* BLUE BEAUTY SHOPPE.

FEBRUARY 10, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker & Condon, JJ.

Caporosto, J. This is an action of trespass on the case for negligence brought by the plaintiff for injuries received in the removal of superfluous hair from her face by electrolysis. The case was tried before a justice of the superior court sitting with a jury and resulted in a verdict for the plaintiff in the sum of $2000. Defendant's motion for a new trial was heard and granted unless the plaintiff remitted all of the verdict in excess of $1000. A remittitur was duly filed by the plaintiff, whereupon the defendant prosecuted the present bill of exceptions which, in addition to an exception to the denial of her motion for an unconditional new trial, includes a number of exceptions to rulings on evidence during the trial.

It is sufficient for our purposes to set forth in general terms, whenever possible, the sharply conflicting evidence in this case. The plaintiff testified that, between May 1939 and September 1940, she received sixty or seventy treatments from the defendant for the removal of superfluous hair from her face by electrolysis. The evidence shows that every such treatment consisted in decomposing the hair root tissue by galvanic current, which was applied to

that tissue by inserting a fine needle in the follicle of each hair that was to be removed. In a short period of time, varying from a few seconds to one or two minutes depending on the texture of the hair, the current was disconnected and the needle extracted. The single hair thus treated was then pulled out with tweezers.

The plaintiff also testified that each treatment lasted an hour, during which time a number of needles were inserted in her face in successive applications as above described, and that from 75 to 125 hairs were pulled out at each treatment. Following every such treatment, which was painful in itself, her face "used to be all red and swollen" with "blood marks all around" where the hairs were "tough" to extract with the tweezers. In a few days after each treatment these places on her face formed pussy scabs, and when these scabs fell off, which was in about a week, her face showed "marks" . . . "like little holes, and some of them looked like blisters that were dried up." She also testified that during these treatments the defendant would sometimes leave her unattended for various intervals or she would busy herself reading or knitting while apparently attending her.

The plaintiff further testified that when she complained to the defendant about the condition of her face the latter replied that there was nothing to worry about, or that the scabs would fall off and there would be nothing left, or that the marks would disappear. Although the above-described condition of plaintiff's face recurred after each treatment and the marks of previous treatments did not disappear, she continued the treatments with the defendant until the latter part of September 1940, when she went to a doctor for treatment of her face. This doctor did not testify nor was his absence as a witness explained by the plaintiff.

In November 1940 the plaintiff went to one Eugene Friedman for the removal of more hair from her face by electrolysis, but, according to his testimony, he refused to treat her at that time because he saw "scars all over her face, and she had scabs and her face was all inflamed, and it looked as if

it was always breaking out". However, he did begin to treat her about a month or so later. Between that time and the opening of the trial of this case in the superior court on October 22, 1941, the plaintiff received twenty such treatments from Friedman.

Testifying as an expert witness for her, Friedman stated in direct examination that when bleeding, sores, pus and scabs occur in the removal of hair by electrolysis, such conditions usually result from failing to insert the needle in the hair follicle, or in failing to remove the needle at the proper time. In cross-examination he admitted, however, that even though the treatment be properly given, inflammation of the skin usually follows as "a natural condition"; that the formation of scabs is "very common" and "is to be expected"; and that it would ordinarily require from three days to a week for such conditions to heal. According to him, his treatments left no permanent marks on plaintiff's face and any such marks were probably due to plaintiff's previous treatments.

The defendant was duly licensed by the state to remove hair by electrolysis. She testified that when the plaintiff came to her for treatment by this process, plaintiff's face, especially the sides and the chin, had a large amount of superfluous hair, coarse, medium and fine; that the skin of the face at those places was "pinkish like, but no scars or skin eruptions"; that this color indicated a sensitive condition of the skin; that the plaintiff told her "she had been using peroxide and ammonia at home herself"; and, further, that witness's niece and employee, Anna F. Colantonio, had given plaintiff "bleaching treatments" at her place of business before the electrolysis treatments began. The niece corroborated her in this last statement. Testifying on this point the plaintiff denied ever using anything but a little powder on her face, and, while admitting that she had received a bleaching treatment at defendant's shop, she stated that such treatment was to the hair of her arms and not to that of her face.

The defendant further testified that, according to her records which she produced in court, she gave plaintiff thirty-one electrolysis treatments, and that at no time during the entire course of those treatments was the plaintiff's face in any such condition as she claimed. On one occasion, early in September 1940, she noticed that plaintiff's face was "inflamed", and upon inquiry was told by her that she had been sea bathing, which was contrary to defendant's instructions. The defendant, at the request of plaintiff's counsel, examined plaintiff's face for "scars" in open court and then testified that she saw just a few slight marks that might be attributed to electrolysis, but that a few other slight marks were definitely the result of some other cause unknown to her.

Doctor Francesco Ronchese, a dermatologist whose qualifications were not questioned by the plaintiff and who, before the trial, had examined her in the presence of her counsel, was introduced as an expert witness for the defendant. The substance of his testimony in reference to the then condition of plaintiff's face is contained in what follows: "Q. And will you tell us what you found, Doctor, from your examination? A. Well, I found this girl had quite a number of hair on her face and she had places where the hair was missing. There was a contrasting appearance between the places where there was hair and where there was no hair, and there were slight places where there are a few little pittings, little bit of a hole some places, and other places where the skin was, well, you would say, shiny or a little smooth, which is not absolutely normal. . . . You look closely to see it. (the pitting) Q. Is that what you would call scars, those little holes? A. Yes, that is what you call scars." He further testified that the smooth and shiny surfaces on her face were caused by "esfoliation" or a peeling off of the skin, which "could be the result of applying some chemicals on it", and that the excessive amount of hair on plaintiff's face was probably due to some abnormality of the "endocrine glands".

Since the instant case is an ordinary action for negligence, a verdict for the plaintiff cannot be sustained unless the two main issues in the case, namely, liability and damages, are proved by a fair preponderance of the credible evidence. Before the issue of damages can be considered, the proof must establish, in the manner just indicated, that the plaintiff was in the exercise of due care; that the defendant was negligent, and that such negligence was the proximate cause of injury to the plaintiff. In considering defendant's motion for a new trial, it was the duty of the trial justice, in accordance with numerous decisions of this court following *Wilcox* v. *Rhode Island Co.*, 29 R. I. 292, to pass his independent judgment upon the weight of the evidence and the credibility of the witnesses as to both liability and damages.

The trial justice decided defendant's motion for a new trial from the bench. We have examined his decision, as it appears in the transcript, and find that he has confined his consideration of the case to the issue of damages. Nowhere in the decision does he express in any way his appraisal of the evidence or the credibility of the witnesses on the issue of liability. In these circumstances, we cannot give to his decision the weight that is ordinarily given by this court to the decision of a trial justice on a motion for a new trial, when such decision is rendered in accordance with our well-established rule.

Therefore, we have examined the record for ourselves and, having in mind that the trial justice in his decision expresses doubt as to plaintiff's credibility respecting her testimony on the question of damages, we have come to the conclusion that the evidence strongly preponderates against the verdict. In our judgment, the defendant is entitled to a new trial on all issues in the case. In view of this conclusion, we purposely refrain from further comments on the evidence for obvious reasons. Our decision makes it unnecessary to consider defendant's other exceptions.

The defendant's exception to the denial of her motion for an unconditional new trial is sustained, and the case is remitted to the superior court for a new trial.

*Kirshenbaum & Kirshenbaum,* for plaintiff.

*Benjamin Cianciarulo, Aram A. Arabian,* for defendant.