268 A.2d 444.

JOHN W. IONATA *vs.* CAROL A. GROISE.
JOHN W. IONATA *vs.* IRENE E. GROISE.

AUGUST 5, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. The plaintiff brought these two civil actions to recover for personal injuries suffered in an intersection accident involving a car driven by him and one driven by the defendant Carol A. Groise and owned by her mother, the defendant Irene E. Groise. The cases were heard before a justice of the Superior Court sitting with a jury and resulted in a verdict for the plaintiff in the amount of $12,500 against both defendants. Thereafter the trial justice granted the defendants' motions for a new trial, and the case is before this court on the plaintiff's appeal therefrom.

Since liability in both cases is dependent upon our decision in the case against defendant Carol, we shall discuss only her case, but our decision will apply with equal force to both.

The accident involved in this case occurred at about 5 p.m. on October 14, 1962, at the intersection of Cathedral Avenue and Hillary Drive in the city of Providence. Carol, then 16 years of age, was driving in a southerly direction on Cathedral Avenue. She was accompanied by three other young girls. The plaintiff, then 17 years old,

was driving his father's automobile on Hillary Drive. He was accompanied by two other young men.

Cathedral Avenue and Hillary Drive run parallel to each other until Hillary Drive makes a right angle turn at a point about 100 feet from its intersection with Cathedral Avenue, which runs generally north and south. Hillary Drive runs generally east and west at its intersection with Cathedral Avenue. There were no stop signs or traffic controls at the intersection at the time of this collision.

The plaintiff's version of the accident is as follows. As he approached the intersection, he slowed his vehicle and noticed an old Chevrolet proceeding on Cathedral Avenue from his left to his right. He continued forward very slowly and, as he arrived at the intersection, he looked to his right and to his left, his visibility to the left being limited to between 75 and 100 feet because of the full bloom of trees which lined both sides of Cathedral Avenue. He testified that, as he began to proceed through the intersection, he saw nothing coming; that suddenly his rear-seat passenger yelled "Look out," and he looked and saw defendant's vehicle 50 to 75 feet to the left in the wrong (left) lane of Cathedral Avenue, and instantaneously heard the screeching of brakes; that he stepped on the gas pedal to avoid the accident; that a whip action resulting from the collision of defendant's right front fender with his left rear fender caused the rear of his auto to swerve out of control very sharply to the right and hit the curbstone on the opposite side of Cathedral Avenue; that he attempted to control his car by applying the brakes, but his foot hit the gas pedal instead; and that his car ultimately hit a large boulder and came to rest in a ravine, causing him serious personal injury.

Carol's testimony is contrary to that of plaintiff. In describing what happened as she approached the intersection she testified as follows:

"I looked to my right because my girl friend screamed. I looked to my right. There was a car coming fast. I slammed on my brake. I came to a stop, [he] came in front of me and he must have lost control of his car because he swerved to the right and the back end of his car hit my right front fender. He lost control of his car and went quite a ways after the scene of the accident to the culvert."

She further testified that as she was approaching Hillary Drive she was driving in the right-hand lane of Cathedral Avenue and that she was in that lane at the time and point of contact.

Donna Bourassa, one of the passengers in defendant's car testified that she saw plaintiff's car coming from her right; that at the time she first saw it the car she was riding in was entering the intersection; that at that time plaintiff's car was three or four car lengths away and was going quite fast; and that it did not slow up before the crash.

Carol Hulten, one of the other young ladies in defendant's car, testified that she did not see plaintiff's car before the crash; that the first time she saw it was when it was just about in front of them, just before it hit; that plaintiff tried to swerve to the right; and that when he did, the back end of his car hit the right front fender of Carol's car, turned to the left and went into the culvert.

Harold Russo was called as a witness by defendant. He testified that as he was driving in a northerly direction on Cathedral Avenue, he saw defendant's automobile coming toward him, "driving to all intents and purposes carefully and normally"; that the squealing of brakes brought his attention to defendant's car; that almost instantaneously he saw plaintiff's car "shooting out of * * * Hillary Drive right across the road" without slowing down or stopping; that it appeared that it was traveling at an exces-

sive rate of speed; and that the back of plaintiff's car hit the front of defendant's car.

In his decision granting defendant's motion for a new trial, the trial justice reviewed the testimony of the parties and the witnesses. He also referred to certain pictures which were in evidence and which showed the skid marks and the location of defendant's automobile after the accident. He noted that plaintiff's testimony was uncorroborated either by the physical facts or by any other witness even though plaintiff admittedly had "two or three passengers" in his car, and that "He did not explain" to the court or jury why he did not bring in at least one of the passengers to corroborate his story. He also noted that the photographs which were taken shortly after the accident show the skid marks of defendant's car, and that the skid marks would indicate that defendant's vehicle was traveling properly on its right side of the road.

The trial justice said that he gave a great deal of weight and credence to the testimony of Russo, whom he characterized as an "impartial witness"; that there was nothing in the record to cause him to disbelieve the testimony of Russo, defendant Carol and the two passengers who were in her car; that it was important to point out that, although both vehicles had passengers in them, defendant brought in two of the passengers who were riding with her, but "for some unknown reason," plaintiff brought in none of the passengers and gave "no reason" why he did not bring them in; and that no reasonable explanation was given why plaintiff did not see defendant's vehicle just prior to the incident, in view of the fact that he saw another vehicle coming from the same direction and passing through the intersection prior to defendant's vehicle approaching the same.

The trial justice further said that he did not accept plaintiff's testimony in view of Russo's testimony that

plaintiff came shooting out of Hillary Drive and in view of the physical evidence which indicated by skid marks that defendant's car was on the right side of the road. He also stated that it was "* * * ironic that the plaintiff should deny that at the point of impact he attempted to put his foot upon the gas and then he lost control of the car and the car went out in a culvert" and that "Counsel for the plaintiff inferentially argued to the Jury that perhaps the plaintiff put his foot on the gas in order to avoid the incident."

He stated that, in the circumstances, from plaintiff's failure to give a reasonable explanation of why he did not see defendant's car just prior to the incident, from that fact alone, he would be warranted in drawing the inference that plaintiff was inattentive and did not look as a reasonable, prudent man would under the circumstances. From plaintiff's failure to produce corroborative testimony, which the trial justice said plaintiff was in a position to do if he saw fit, the trial justice said that "* * * the inference must be strong against him, if these witnesses did appear in his behalf that they would be unfavorable."

The trial justice then concluded that, although he approved the verdict as to the amount, plaintiff had not satisfied him by a fair preponderance of the evidence that he himself was in the exercise of due care, and therefore granted defendant's motion for a new trial.

The plaintiff contends that the trial justice erred in granting defendant's motion for a new trial. One of the arguments made by him in support of his appeal is that the trial justice misconceived material evidence on controlling issues. Since we believe there is merit to this argument, we shall address ourselves to this issue.

The duty of a trial justice in considering a motion for a new trial on the ground that the verdict is against the evidence is well settled in this state. In the exercise of

his independent judgment, the trial justice must consider all the material evidence in the case in the light of his charge to the jury, and he must pass on its weight and on the credibility of the witnesses. *Barbato* v. *Epstein,* 97 R. I. 191, 196 A.2d 836. When a trial justice, in passing upon such a motion, exercises his independent judgment in considering the weight of the evidence and the credibility of the witnesses and, in so doing, neither overlooks any material evidence nor misconceives the law of the case, his decision will be given great weight by this court, *State* v. *Deans,* 93 R. I. 266, 174 A.2d 666, and will not be disturbed by us. *Labbe* v. *Hill Brothers, Inc.,* 97 R. I. 269, 197 A.2d 305. But when such a decision, either granting or denying a motion for a new trial, is based upon a misconception of the evidence on a material point, the verdict does not acquire any additional support from the approval of the trial justice. *Jones* v. *Thornton,* 74 R. I. 510, 62 A.2d 662; *Surmeian* v. *Simons,* 42 R. I. 334, 107 A. 229. As the court said in *Anderson* v. *Johnson,* 59 R. I. 241 at 245, 195 A. 240 at 242:

> "This court will not give the decision of a trial justice, on a motion for a new trial, the weight and persuasive force which it would otherwise accord such a decision, if it is apparent from an examination of the entire record that the decision of the trial justice is based upon a misconception of the evidence, and that he omitted to consider evidence tending fairly and sufficiently to support the verdict."

On this record it appears that the trial justice properly performed his duty in passing on the motion for a new trial (i.e., in passing on the weight of the evidence and the credibility of the witnesses). The narrow question before us is whether he misconceived material evidence on controlling issues in reaching his decision. The plaintiff, as appellant, has the burden of persuading this court that he did misconceive such evidence. *Dawson* v. *Rhode Is-*

*land Auditorium, Inc.,* 104 R. I. 116, 123, 242 A.2d 407, 412. If he sustains this burden, it then becomes our duty to examine independently the transcript of the evidence, without the help we ordinarily receive from the findings of a trial justice on a motion for a new trial, and to determine whether the evidence is sufficient to sustain the verdict or whether it strongly preponderates against the verdict. *Audette* v. *N. E. Transp. Co.,* 71 R. I. 420, 428, 46 A.2d 570, 574.

In independently examining the transcript we must examine the evidence in the light most favorable to the verdict and accept as truthful all competent evidence which, if believed, would support the verdict. We then determine whether such evidence is sufficient to sustain the verdict by the required quantum of proof or whether the evidence greatly preponderates against the verdict. *Rachiele* v. *McGovern,* 107 R. I. 241, 266 A.2d 36; *Goodman* v. *The Employers' Liability Assurance Corp.,* 107 R. I. 451, 268 A.2d 285; *Audette* v. *N. E. Transp. Co., supra.* Compare *State* v. *Contreras,* 105 R. I. 523, 253 A.2d 612. We proceed therefore to an examination and consideration of plaintiff's argument that the trial justice misconceived material evidence which influenced his decision.

In his analysis of the physical facts, the trial justice, in referring to plaintiff's testimony, spoke as follows:

> "If his story could not be criticized it would be a different story but in this particular instance the plaintiff in the first instance stated that he saw a vehicle proceeding from the left to the right and it passed through the intersection, he saw this vehicle some fifty — sixty feet away and although the defendant came from the same direction he gave no explanation as to why he could not see * * * the defendant's vehicle which is traveling in the same direction."

The plaintiff points out, and the transcript supports him, that the testimony is otherwise. The plaintiff testified

that it was defendant's automobile that was 50 to 75 feet away when he first saw it,[1] not the other automobile which passed in front of him immediately prior to the plaintiff's reaching the intersection.

The plaintiff next points to the following as another instance of a misconception of material evidence by the trial justice. Towards the end of his decision the trial justice made the following statements:

> "It is ironic that the plaintiff should deny that at the point of impact he attempted to put his foot upon the gas and then he lost control of the car and the car went out in a culvert.
>
> "Counsel for the plaintiff inferentially argued to the Jury that perhaps the plaintiff put his foot on the gas in order to avoid the incident.
>
> "Under the circumstances this Court feels that the plaintiff has not by a fair preponderance of the evidence, credible evidence, convinced this Court or satisfied this Court that he-himself was in the exercise of due care."

We have no way of knowing what counsel for plaintiff argued to the jury, because his argument to the jury is not in the transcript. But the transcript does not support the trial justice's statement that plaintiff denied that "* * * at the point of impact he attempted to put his foot upon

---

[1] "Q What, if anything, happened as you approached the intersection of Hillary Drive and Cathedral Avenue?

"A Well, as I approached the intersection I slowed my vehicle down and I noticed an old Chevrolet coming from my left to my right and I continued forward, very slow, and as I got to the intersection I looked up and I saw nothing and it wasn't until I was half way through the intersection that I saw the other vehicle.

"Q What other vehicle?

"A That was involved in the collision.

"Q Where was this vehicle coming from?

"A It was coming from my left.

"Q When you first saw it about how far away was it from you?

"A I would say—

"Q —if you know?

"A —from fifty to seventy-five feet."

the gas * * *." A careful reading of the transcript reveals that plaintiff testified that upon seeing defendant's car, and prior to impact, he stepped on the gas in order to avoid the collision and that after impact he tried to stop his car by putting his foot on the brake but that his foot hit the gas pedal instead of the brake.[2]

We are satisfied from the foregoing that plaintiff has sustained his burden of showing that in arriving at his decision the trial justice misconceived material evidence which influenced his decision. *Dawson* v. *Rhode Island Auditorium, Inc., supra.* Therefore we must now examine the transcript independently, without any help from the findings of the trial justice, to determine for ourselves whether the evidence is sufficient to sustain the verdict or whether it strongly preponderates against it. Since this is an ordinary action for negligence, the verdict for plaintiff cannot be sustained unless it is established by a fair preponderance of the evidence that plaintiff was in the exercise of due care, that defendant Carol was negligent, and that

---

[2]"Q When you saw it there was nothing you could do to avoid the accident?

"A Well, I tried to get away from it but I couldn't.

"Q How did you try to get away?

"A I tried to get out of its way. I stepped on the gas pedal to try to avoid from her hitting me.
* * *

"Q I say I don't quite understand you. When did you put your foot on the gas to try and avoid the accident?

"A Well, I was going through the intersection and Andrew in the back seat yelled, 'Look Out!'. I only had a moment. I took a fast look, heard the brakes, I then tried to step on the gas to get away from her and when I felt the impact I felt the car swerve over to the right, the back end of the car swerved over to the right, I tried to do something to stop it naturally, I tried to put my foot on the brake to stop the vehicle. I couldn't stop it and my foot hit the gas instead of the brake.
* * *

"Q Did you try to avoid it by pulling at all to the right?

"A No. I just tried to step on the gas."

such negligence was the proximate cause of plaintiff's injury. *Martino* v. *Simonelli*, 69 R. I. 4, 9, 30 A.2d 459, 461.

The evidence in this case as to what happened immediately prior to, and at the moment and point of impact, is in direct conflict. We have no way of knowing on what ground the jury based its verdict. But it is clear that in order for the jury to reach a verdict in favor of plaintiff on the question of liability, under the instructions given by the trial justice, it had to find that plaintiff had proven by a fair preponderance of the evidence that he was in the exercise of due care, that defendant was negligent, and that defendant's negligence was the proximate cause of plaintiff's injury.

We have already discussed his testimony at some length and, therefore, will not repeat it here, except to point out that plaintiff testified that as he approached the intersection he slowed his vehicle, noticed an automobile coming from his left to his right, pass in front of him; that he then continued forward, very slowly; that as he got to the intersection he looked up and saw nothing; that it was not until he was halfway through the intersection that he saw the other vehicle; and that at that point defendant's vehicle was about 50 to 75 feet away. He explained that his visibility looking north on Cathedral Avenue was limited to 75 to 100 feet because of the full bloom of the trees which lined both sides of Cathedral Avenue. As the transcript shows plaintiff had the right-of-way. While the right-of-way rule is not absolute, *Dembicer* v. *Pawtucket Cabinet & Bldrs. Finish Co.*, 58 R. I. 451, 193 A. 622, the jury certainly had a right to consider this factor together with other evidence, in accordance with the trial justice's instructions, in resolving the conflicting evidence before it.

The defendant places great weight on the photos in evidence. The jury obviously was not persuaded by this evidence, which merely indicates that defendant's car was

coming down the right-hand side of Cathedral Avenue. Nor was the jury persuaded by the testimony of defendant or her two passengers or Harold Russo. On the contrary, they obviously believed plaintiff's version of what actually happened, as is evidenced by their verdict.

After examining the evidence, we are satisfied that plaintiff's testimony, if believed, would support the verdict, and is sufficient to prove defendant's liability by a fair preponderance of the evidence. We cannot, therefore, say that the evidence strongly preponderates against the verdict, and consequently we do not disturb the verdict.

In each case the plaintiff's appeal is sustained; the order granting the defendant's motion for a new trial is reversed, and each case is remitted to the Superior Court for entry of judgment on the verdict.

*Eugene A. Liberati,* for plaintiff.

*Keenan, Rice, Dolan & Reardon, Leonard A. Kiernan, Jr.,* for defendants.